J-A05001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: B.S., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.S., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2828 EDA 2023 |

Appeal from the Order Entered October 12, 2023
In the Court of Common Pleas of Wayne County Civil Division at No(s):
CP-64-DP-0000031-2020

BEFORE:  DUBOW, J., KING, J., and LANE, J.

MEMORANDUM BY DUBOW, J.:                 **FILED MARCH 13, 2024**

Appellant, J.S. ("Mother"), appeals from the October 12, 2023 order that changed the permanency goal of her child, B.S. ("Child"), from Reunification to Adoption.  Upon review, we affirm.

The relevant factual and procedural history is as follows.  Mother and G.S. III ("Father")[1] are parents to three-year-old Child and her older sister, J.S. ("Sister")[2] (collectively, "Children").  On January 4, 2022, Wayne County Children and Youth Services (the "Agency") took emergency custody of Children after receiving and verifying numerous reports that Father perpetrated domestic violence against Mother in front of Children and that Mother was unable to ensure Children's overall safety.  The Agency also had

---

[1] Father does not oppose the trial court's finding that a goal change to Adoption is in Child's best interest and Father is not a party to this appeal.

[2] Sister has been reunified with Mother and is not a party to this appeal.

concerns regarding Mother's supervision of Children and compliance with services, including early intervention services.

On January 11, 2022, the trial court adjudicated Children dependent and placed Children in foster care. The court ordered Mother to comply with a drug and alcohol assessment and follow all recommendations, to engage in domestic violence counseling, and to engage in parenting classes. The court also ordered Mother to have bi-weekly supervised visitation with Child, which could be increased in frequency or duration or decreased in supervision at the recommendation of the treatment team or a contracted service provider.

The court held regular permanency review hearings and found Mother's compliance with the permanency plan to range from moderate to substantial. The court found Mother's progress toward reunification to generally range from minimal to moderate, only finding substantial compliance during the permanency review hearing on October 25, 2022.

In April of 2023, Antionette Hamidian, Psy.D. CCC-SLP, BS, conducted a neuropsychological evaluation of Mother. Dr. Hamidian is a licensed psychologist, licensed speech and language pathologist, and a licensed behavioral specialist. Dr. Hamidian diagnosed Mother with severe Attention Deficit Hyperactive Disorder and Post Traumatic Stress Disorder and found her prone to impulsivity and inattention. Dr. Hamidian concluded that Mother has a below average classification of intelligence with an I.Q. of 81, but that does not qualify Mother as having an intellectual disability.

On September 8, 2023, the Agency filed a petition to change Child's permanency goal from Reunification to Adoption. On October 10, 2023, the court held a hearing on the petition. The court heard testimony from Stephanie Pender, Agency Supervisor; Brianna McCombs, Agency Caseworker; Ashley Starnes, Agency Social Service Aide Supervisor; Kelly Cousins, Agency Social Service Aide; Karen Bates, Agency Social Service Aide; Dr. Hamidian; and Mother.

In sum, Ms. Pender testified that Child is placed in a foster home where she is doing well. Ms. Pender explained that Child has an Autism diagnosis and is non-verbal but is learning to communicate through sign language. She testified that Mother has supervised visitation with Child for three hours twice per week and that Mother has attended all of the visits that the Agency has offered. Ms. Pender testified that while Mother is affectionate and caring towards Child, she is unable to adequately supervise Child independently. Ms. Pender expressed that the Agency continues to have safety concerns during visits where Mother repeatedly puts Child in unsafe or unhealthy situations including feeding Child food that is known to upset Child's stomach, letting Child climb on a couch and gain access to an open second-story window, leaving a lit candle within Child's reach, and napping next to Child with a large knife attached to her. Ms. Pender also testified that Mother often talks to Agency workers instead of paying attention to Child during visitation and that Mother refuses to follow redirection and is, instead, argumentative and defensive. Ms. Pender testified that Child is clingy and cranky after visits with

Mother and wants the comfort of her foster home. Ms. Pender testified that a goal of Reunification was not appropriate or feasible. She stated that Child had been placed for twenty-one months in a pre-adoptive home, that the Agency has offered Mother all the appropriate services, and that there is not a foreseeable date where Child could be safely returned to Mother's care. Ms. Pender testified that the Agency was recommending a goal change to Adoption.

Ms. McCombs, Ms. Starnes, and Ms. Bates all testified that they supervised visits between Mother and Child and had safety concerns during those visits, that Mother does not listen to redirection and correction during visits, and that Child is not safe to be unsupervised with Mother for any length of time. Specifically, Ms. McCombs reiterated concerns about the open window incident and relayed an additional incident where, during one outdoor visit, Mother began to take Child down to wade at the edge of the river after seeing warning signs that the river level was dangerous and life jackets were required and Ms. McCombs had to intervene to keep Child safe.

Ms. Cousins testified that she supervised one visit and that Mother responded well to redirection, that Mother was attentive and engaging, but that Mother was unable to demonstrate that she could care for Child on her own. Dr. Hamidian testified regarding the results of the neuropsychological evaluation, as stated above.

Mother testified that she is currently engaged in weekly CBT therapy through Alpha and Omega, engaged in monthly medicine management with

Dr. Stein for her ADHD medication, and that she was successfully discharged from her methadone program in October of 2023. Mother testified that she was receiving parenting services through Justice Works until she expressed concerns about her assigned worker, who was subsequently removed from her case. Mother further testified that she was not assigned another worker through Justice Works or offered another parenting services provider. Mother stated that she always followed redirection during visitation. Mother explained the "river incident," asserting that she did not see any warning sign and that she was not going to let Child swim in the water, but only wade near the edge. Mother further testified that she remedied the dangerous window situation by putting a baby gate in the window. Mother testified that her most recent social service aide, Ms. Thomas, recently left her position and, when she texted Mother to say goodbye, she told Mother how positive the visits were and that Mother had a strong bond with Child. Mother testified that she would like Child to be returned to her care, that she and Child have an "amazing" bond, and that the visits are "amazing" with no issues. N.T. Hearing, 10/10/23, at 137. Mother testified that she is prepared for Child to come home and that she would follow through with all medical and therapeutic services. Mother testified that she loves Child so much and wants her to be home with herself and Sister and that it would be detrimental if that bond were to be broken.

At the conclusion of the hearing, the trial court changed Child's permanency goal from Reunification to Adoption with a concurrent permanency goal of Subsidized Permanent Legal Custody ("SPLC").

Mother timely appealed. Both Mother and the trial court complied with Pa.R.A.P. 1925.

Mother raises the following issues for our review:

A. Did the trial court commit an abuse of discretion and/or err in changing the primary permanency goal of [] Child from [R]eunification to [A]doption and the concurrent permanency goal from [A]doption to SPLC, as there was insufficient evidentiary support offered to support the changing of said goals, such that the same was against the weight of the evidence presented by the parties.

B. Did the trial court commit an abuse of discretion and/or err in changing the primary permanency goal of [] Child from [R]eunification to [A]doption and the concurrent permanency goal from [A]doption to SPLC, as clear and convincing evidence was not provided to show that the changing of said goals was in the best interests and welfare of [] Child.

Mother's Br. at 4.

**A.**

We review a trial court's decision to change a child's permanency goal to Adoption for an abuse of discretion. *In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010). In order to conclude that the trial court abused its discretion, this Court "must determine that the court's judgment was manifestly unreasonable, that the court did not apply the law, or that the court's action was a result of partiality, prejudice, bias or ill will, as shown by the record." *Interest of H.J.*, 206 A.3d 22, 25 (Pa. Super. 2019) (citation omitted). Our standard of review in dependency cases requires this Court "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept

the lower court's inferences or conclusions of law." ***R.J.T.***, 9 A.3d at 1190. This Court is "not in a position to make the close calls based on fact-specific determinations." ***Id.*** Rather, "we must defer to the trial judges who see and hear the parties and can determine the credibility to be placed on each witness and, premised thereon, gauge the likelihood of the success of the current permanency plan." ***Id.*** Notably, even if this Court "would have made a different conclusion based on the cold record, we are not in a position to reweigh the evidence and the credibility determinations of the trial court." ***Id.***

The overarching purpose of the Juvenile Act, which governs goal change requests, is "[t]o preserve the unity of the family whenever possible or to provide another alternative permanent family when the unity of the family cannot be maintained." 42 Pa.C.S. § 6301(b)(1). At each dependency review hearing, the trial court must consider, *inter alia*, the continuing necessity for and appropriateness of the child's placement, the extent of compliance with the permanency plan, the extent of progress made toward alleviating the circumstances which necessitated the child's placement, the appropriateness and feasibility of the current placement goal for the child, the likely date the goal might be achieved, and the child's safety. 42 Pa.C.S. § 6351(f). The focus of goal change proceedings, like all dependency proceedings, is on "the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." ***H.J.***, 206 A.3d at 25. "The parent's rights are secondary in a goal change proceeding." ***In re***

***R.M.G.***, 997 A.2d 339, 347 (Pa. Super. 2010) (citation and internal quotation marks omitted).

The agency has the burden to show that a goal change would serve the child's best interests. ***Id.*** If reunification with the child's parent or guardian is not in the child's best interest, the trial court may determine that Adoption is the appropriate permanency goal. ***H.J.***, 206 A.3d at 25; 42 Pa.C.S. § 6351(f.1)(2). Notably, "Adoption may not be an appropriate permanency goal if severing an existent parent-child bond would have a detrimental effect on a child." ***H.J.***, 206 A.3d at 25. Further, "[b]ecause the focus is on the child's best interests, a goal change to [A]doption might be appropriate, even when a parent substantially complies with a reunification plan." ***R.M.G.***, 997 A.2d at 347.

This Court has held that placement in a pre-adoptive home should be completed within 18 months. ***H.J.***, 206 A.3d at 25. "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." ***In re Adoption of M.E.P.***, 825 A.2d 1266, 1276 (Pa. Super. 2003) (citation omitted). "Thus, even where the parent makes earnest efforts, the court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***R.M.G.***, 997 A.2d at 347 (citation and internal quotation marks omitted).

**B.**

Mother avers that the trial court abused its discretion when it changed Child's permanency goal from Reunification to Adoption.[3] Mother's Br. at 4. She argues that the goal change is against the weight of the evidence and that the Agency failed to offer clear and convincing evidence that a goal change was in Child's best interest. *Id.* Mother further argues that Child was removed from her care due to allegations of ongoing domestic violence between Mother and Father and that she has taken all appropriate steps to separate herself from Father, including pressing charges and obtaining a Protection from Abuse Order against him. *Id.* at 14. Mother also contends that she has been compliant with all recommended services, has attended all visitations, and has progressed to weekly supervised visitation within her home. *Id.* at 15. Mother emphasizes that she has made enough strides to have her older daughter, J.S., returned to her care and custody in March of 2023. *Id.* Finally, Mother argues that Ms. Thomas characterized the bond between Mother and Child as "strong" and, therefore, a goal change to Adoption is not in Child's best interest.[4] *Id.* at 19.

_____

[3] Upon review, Mother fails to develop any argument that the trial court erred in finding that a concurrent permanency goal of SPLC was in Child's best interest, and therefore, the claim is waived. *Commonwealth v. Given*, 244 A.3d 508, 510 (Pa. Super. 2020) (explaining that when an appellant failed to develop an argument in the argument section of their brief, the issue is waived). Accordingly, we focus our analysis on the court's finding that a permanency goal of Adoption was in Child's best interest.

[4] Mother also avers, for the first time on appeal, that the Agency did not offer Mother adequate services to reunify with Child. Mother's Br. at 15-16. Mother

*(Footnote Continued Next Page)*

As stated above, when deciding whether to change a child's permanency goal, the focus is on the child's best interest rather than the parent's compliance and hopes for the future. A court must consider the Section 6351 factors to determine what is in child's best interest, as the trial court did in this case. Instantly, the trial court credited Ms. Pender's and Ms. McCombs's testimony that, although Mother had completed parenting classes and complied with other services, she was not making sufficient progress to warrant unsupervised visitation with Child due to ongoing safety concerns. The trial court opined:

> Despite having 100% visitation attendance, [M]other's compliance levels with the January 11, 2022 permanency plan have never exceeded substantial. Ms. Pender testified that visits with [Child] at [M]other's home had its "ups and downs." Subsequent visits were moved to the Hand House due to safety concerns for [Child], including an incident when [Child] was hanging on a dresser, an instance where an unscreened window was wide open and lit candles left in the home. Ms. Pender testified that [M]other was observed laying next to [Child] with a large knife attached to her hip that [M]other wears for her own safety. Ms. Pender testified that [M]other does not take redirection well from [Agency] staff and that she becomes defensive and argumentative when staff points out a safety concern. Ms. Pender testified that [M]other continues to feed [Child] foods that make [Child] ill despite being advised to feed

---

avers that the testimony revealed that in June of 2023, the Agency ceased utilizing Justice Works for parenting services due to the inappropriate conduct of one of its employees and failed to offer Mother alternative services. *Id*. Mother failed to raise this issue in her Rule 1925(b) statement, and the trial court did not to address it in its Rule 1925(a) opinion. As this claim is being raised for the first time on appeal, we find it to be waived. *See* Pa.R.A.P. 1925(b)(4)(vii)("Issues not included in the [s]tatement . . . are waived."); Pa.R.A.P. 302(a)("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal.").

B.S. foods that are gentle on her system. WCCYS [The Agency] caseworker Brianna McCombs also testified regarding safety concerns, including the open window.

Trial Ct. Op., 11/14/23, at 2. The trial court also credited Ms. Pender's testimony that Mother had made minimum progress towards her goal of Reunification with Child, explaining "[the Agency]'s recommendation as of the date of the hearing was minimal progress. Ms. Pender testified that although [M]other has completed the parenting classes available to her, she has not exhibited any application of the parenting skills learned." *Id.*

Finally, the trial court placed weight on the fact that Child had been in care for twenty-one months and was still unable to progress to unsupervised visitation with Mother due to safety concerns, which made it unfeasible to determine a realistic reunification timeline. The trial court opined:

The permanent placement goal at the time of the goal change hearing was for [Child] to return to parent or guardian. The projected date by which the goal for [C]hild might be achieved was undetermined. This current permanent placement goal is neither appropriate nor feasible. At the time of the hearing, [Child] had been in placement with [the Agency] for twenty-one (21) months. Pursuant to the Adoption and Safe Families Act, [the Agency] is required after the minor child has been in placement for fifteen (15) to twenty-two (22) months to look at whether there is a compelling reason not to request a goal change to [A]doption. Based on the [P]arents' inability to comply with the permanency plan, [the Agency] was constrained to request a goal change to [A]doption. This Court is in agreement with [the Agency]. The lack of permanency in [C]hild's life cannot go on indefinitely. Therefore, a goal change to [A]doption is in the best interest of [Child].

Trial Ct. Op. at 3.

The record supports the trial court's findings and we decline to reweigh the evidence or usurp credibility determinations. Accordingly, we discern no abuse of discretion.

Mother's argument that Child's permanency goal should be Reunification because Sister was returned home is unavailing. Mother has provided no authority to support her assertion that siblings should have the same permanency goal. Moreover, as stated above, the focus of goal change proceedings is on "the safety, permanency, and well-being of the child and the best interests of the child must take precedence over all other considerations." *H.J.*, 206 A.3d at 25. Like all children, Child is a unique individual with unique needs, and the court is required to focus on what is in her personal best interest.

## C.

In conclusion, the trial court did not abuse its discretion when it changed Child's permanency goal from Reunification to Adoption. The record supports the trial court's findings, and we decline to reweigh the evidence. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/13/2024